**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | |
| **AMANDA J. DOTSON** | ) | **CHAPTER 7** |
| | ) | |
| Debtor. | ) | **CASE NO. 09-72188** |

_____

| | | |
|---|---|---|
| **AMANDA J. DOTSON** | ) | |
| | ) | **Adv. Proc. No. 13-07027** |
| Plaintiff, | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **UNITED RECOVERY GROUP** | ) | |
| | ) | |
| Defendant. | ) | |

_____

## MEMORANDUM DECISION

The matter before the Court is the Debtor's Complaint Seeking Contempt for Violation of the Discharge Injunction and Seeking Remedies for Coercive Collection Practices in Violation of the Fair Debt Collection Practices Act and the Debtor's Motion for Default Judgment against United Recovery Group. For the reasons noted below, the Court will grant the Debtor's Motion as to the violation of the discharge injunction, but will deny it and dismiss the Complaint with respect to any claim under the Fair Debt Collection Practices Act.

## FINDINGS OF FACT

The Debtor filed for Chapter 7 relief in this Court on August 26, 2009 and listed Bank of America, N.A. as a creditor on Schedule F in the amount of $3,185.35. Bank of

America received notice of the Debtor's bankruptcy filing by first class mail and electronically

as evidenced by Debtor's Exhibit A.  This debt was subject to this Court's Order of Discharge

entered November 24, 2009.  The Debtor's Complaint alleges that Bank of America willfully

violated the discharge injunction when it continued collection efforts by retaining United

Recovery Group ("United"), a debt collector, after the Discharge Order was entered.  The Debtor

asserts that United contacted her on her cell phone on or about October 24, 2012, demanded

payment on the discharged debt, and threatened to intercept her vehicle payment,[1] garnish her

wages and/or her bank account unless she immediately arranged for a bank debit of $3,500.[2]  She

also alleges that United contacted her mother by telephone on or about October 24, 2012 in an

attempt to collect the debt.  United followed up the same day with an email, as well as a letter

mailed to the Debtor, restating that United's client will accept $3,663.15 in settlement of the debt

and "[u]pon receipt of certified funds, we will file a dismissal of the action."  (Debtor's Exhibits

B and C).

In response to the collection attempts, the Debtor represents that she experienced

great fear that United would follow through with the interception of her vehicle payment or

would garnish her wages or bank account.  Because of this, the Debtor asked her mother to

transfer the funds to pay the settlement into her bank account and subsequently arranged a direct

debit payable to United.  Only after authorizing the bank debit did the Debtor consult her

---

[1] Precisely what the Debtor understood this threat to mean is not clear from the evidence
submitted to the Court, but clearly it frightened her enough to take precipitous action to comply
with the demand made upon her.

[2] The amount that the Debtor asserts was requested in the cell phone conversation is
inconsistent with the settlement amount of $3,663.15 listed in the email correspondence, letter,
and the amount that was ultimately transferred according to the Debtor's affidavit.

2

counsel, who sent two letters to United advising of the Debtor's bankruptcy discharge and requesting return of the funds received.  The first letter was sent on October 26, 2012; in the second letter, sent November 28, 2012, counsel asked United to provide an explanation if it believed its debt was not subject to the Debtor's discharge.  United did not respond to either communication.

The Debtor alleges in the First Claim that United's collection activities constitute willful violations of the discharge injunction provided for by 11 U.S.C. § 524.  In the Second Claim the Debtor asserts that United's acts and omissions constitute violations of the Fair Debt Collection Practices Act including violations of 15 U.S.C. §§ 1692e(A)(4), (5), (9), (10), (13), and 1692f(6) by misrepresenting imminence of legal action and making other false and misleading representations; violations of 15 U.S.C. §§ 1692e(11) and 1692g by failing to provide required notices in its communications; and violations of 15 U.S.C. § 1692f(1) by collecting and attempting to collect amounts not permitted by law and by otherwise using unfair and unconscionable methods.  As a result the Debtor requests a number of forms of relief:

> (1)  Ordering Defendants to refund all monies collected from Plaintiff with interest thereon at the lawful rate.
> (2)  Finding that Defendants are in contempt of Court for violating 11 U.S.C. §524;
> (3)  Awarding Plaintiff damages, costs and attorney fees pursuant to 11 U.S.C. §105(a);
> (4)  Awarding Plaintiff actual and statutory damages, and reasonable attorney's fees and litigation expenses against Defendant United Recovery Group pursuant to 15 U.S.C. §1692k;
> (5)  Declaring that Defendants' policies and practices are unlawful;
> (6)  Enjoining Defendant's [sic] from continuing their practices and policies; and
> (7)  Granting such other or further relief as is appropriate.

The pre-trial conference was initially set for July 3, 2013 but was continued to

3

July 17, 2013 prior to the hearing at the request of the Debtor.  On July 17, 2013 counsel for the Debtor announced that he had reached a settlement with Bank of America and that, while he had exchanged emails with the president of United, no settlement had been reached as to that defendant.  Counsel for the Debtor requested a continuance to August 21, 2013 so that he could file a motion for default judgment as to United.  The Motion for Default Judgment was filed on July 22, 2013 and it set out that the summons and Complaint were served on United's president Matthew A. Marcinko by certified mail and the return receipt shows that it was received on May 20, 2013.  To date United has not filed a response or otherwise appeared.  On August 9, 2013 the Debtor filed a Notice of Dismissal with respect to Bank of America which was granted by an Order entered the same day.  At the pre-trial conference on August 21, 2013, Debtor's counsel appeared and requested a continuance due to the fact that the Debtor was unable to be present and testify.  Instead, the Court requested that the Debtor prepare an affidavit setting forth the assertions in the Complaint and that counsel submit a statement indicating time spent on the matter and his belief as to what reasonable compensation would be.  These documents were filed on September 3, 2013.

The Debtor's affidavit was, in large part, a reiteration of the Complaint.  It added assertions that United implied that a legal action was pending during the phone call to the Debtor, that she requested time to contact her bankruptcy attorney but the United representative said she did not have time and that if she did not act immediately, she would owe more than $6,000.  She also stated that United never advised her in any communication that she had the right to question the validity of the debt.

Counsel's billing statement showed a total of 26.7 hours spent on this matter at a

4

rate of $200 per hour for a total of $5,340.  The bottom of the document contained the following,

> Although the terms of the settlement with Bank of America are
> confidential, Ms. Dotson and our firm agreed on an attorney fee of
> $1,000 for our services in connection with our claims against Bank
> of America, which amount was paid from the settlement proceeds.

It appears, from the Court's review of the statement, that 4.1 hours is allocated to time spent

solely on dealings with Bank of America.  It also appears that at least 12.5 hours of the time

spent could have been allocated between Bank of America and United.  Of the total time spent

by counsel on this matter, the Court finds that 24.2 hours should be allocated to the claim

involving the asserted violation of the discharge injunction and 2.5 hours should be allocated to

the Fair Debt Collection Practices Act claim.

On September 10, 2013 the Court sent a letter to counsel expressing concern

regarding the determination of an appropriate award against United without knowledge of the

voluntary recovery obtained from Bank of America and also whether the evidence provided

demonstrated that United was actually aware that the debt had been discharged in bankruptcy

when it made its demands upon the Debtor.  Debtor's counsel responded in a letter dated

September 13, 2013 that the settlement with Bank of America allowed for disclosure "to the

extent required by a court of competent jurisdiction."  As such, the settlement with Bank of

America was in the total amount of $2,000, $1,000 of which was allocated to attorney's fees.

With regard to whether United had knowledge of the discharge, counsel asserts that United had

knowledge because the Debtor requested time to speak with her bankruptcy attorney before she

agreed to pay over the settlement amount.  He urges that the statement put United "on notice that

a bankruptcy stay or a discharge was a possibility."  Further, he sets forth that the letters his

office sent to United on October 26, 2012 and November 28, 2012 put them on actual notice

5

because the first letter included a copy of the discharge order and the second requested that

United explain if it believed its debt was not subject to discharge.  By failing to return the funds

after receipt of the letters, he argues that United violated the discharge injunction.  Finally he

contends that United violated 15 U.S.C. § 1692f(1) by collecting any amount not "permitted by

law," that § 1692f(1) does not appear to require the debt collector's knowledge that the

collection is not permitted by law, and that United has not plead the affirmative defense of bona

fide error under 15 U.S.C. § 1692k(c).  Following counsel's response letter, the matter is now

ready for decision.

　　　　　The Court accepts the argument offered by counsel for the Debtor and finds that

although evidence is lacking as to what, if anything, United knew about this bankruptcy case and

the discharge granted in it at the time its representative initiated collection efforts against Ms.

Dotson, the evidence does show that its employee was undeterred by the mention that the

account obligor had a bankruptcy attorney and that instead of inquiring as to any particulars

concerning that representation, the collector pushed even harder and said there wasn't time for

Ms. Dotson to contact her attorney but that the money must be sent forthwith or even more

would have to be paid.  When this evidence is coupled with United's subsequent unwillingness

to respond to counsel's later correspondence specifically advising that the debt had been

discharged in this case or make any effort since the filing of the adversary proceeding to make

amends for its improper collection activities, such later conduct provides evidence as to the

Defendant's state of mind at the time its demands upon Ms. Dotson were made.  The reasonable

inferences from this evidence justify this Court in finding, which it hereby does, that United

either was aware that the debt had been discharged or proceeded, after being informed that Ms.

6

Dotson had a bankruptcy attorney, with a reckless disregard as to whether or not Ms. Dotson

continued to have any legal liability to pay the debt United was bent on collecting.  The Court

further finds that the Debtor's actual damages suffered as a result of United's violation of the

discharge injunction were $3,663.15 and that her counsel has provided legal services to assist her

in enforcing the Court's discharge injunction having a reasonable value of $4,840.


CONCLUSIONS OF LAW

This Court has jurisdiction of this matter by virtue of the provisions of 28 U.S.C.

§§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on

July 24, 1984 and Rule 3 of the Local Rules of the United States District Court for the Western

District of Virginia.  The Court further concludes that consideration of a motion or complaint by

a bankruptcy debtor seeking to hold a creditor to account for actions violating the discharge

injunction is inherently a "core" bankruptcy proceeding within the meaning of 28 U.S.C. §

157(b)(2) because it concerns the court's power to enforce its own orders.

The Court concludes though that such is not the case with respect to an action

asserting a violation of the Fair Debt Collection Practices Act ("FDCPA").  The clear weight of

authority is that bankruptcy courts do not have jurisdiction over such post-discharge claims

because they do not arise under the Bankruptcy Code or "in" the case and their determination

can have no effect upon the bankruptcy estate.  Furthermore, such "claims are not 'related to'

[the] bankruptcy case, and bankruptcy courts may not exercise supplemental jurisdiction to hear

unrelated claims."  *Harlan v. Rosenberg & Assocs., LLC (In re Harlan)*, 402 B.R. 703, 714

(Bankr. W.D. Va. 2009) (citing other decisions) (Krumm, J.); *Gates v. Didonato (In re Gates)*,

7

2004 WL 3237345 at *3, No. 04-12076 (Bankr. E.D. Va. Oct. 20, 2004) (Mitchell, J.).  This result has been reached even in cases, such as is presented here, where the alleged violation of the FDCPA is inextricably part and parcel of a creditor's attempt to collect a debt which has been discharged.  *Harlan*, 402 B.R. at 713, *Gates*, 2004 WL 3237345 at *2.  Accordingly, the Court concludes that it does not have subject matter jurisdiction over the Debtor's FDCPA claims and therefore will dismiss them without prejudice to their assertion in a court having jurisdiction to consider them.

Although the Bankruptcy Code does not expressly create a cause of action in favor of a former bankruptcy debtor who has been victimized as a result of a creditor's actions which violate the discharge injunction contained in the order of discharge granted to that debtor as is provided in § 362(k) for violations of the automatic stay, courts have recognized that it is within a bankruptcy court's power under § 105 of the Bankruptcy Code to enforce its injunction against a creditor that has ignored or defied the discharge injunction by awarding damages and attorney's fees to the debtor who has been prejudiced by such conduct.[3]  In both the *Harlan* and *Gates* decisions already cited, such relief was awarded in adversary proceedings brought by the affected debtors in the courts from which they had received their discharges.  The remaining Defendant has not challenged the assertion of this claim in an adversary proceeding rather than in a motion in the underlying case and the Court is satisfied that, in any event, it is not a question

---

[3] *See Cherry v. Arendall (In re Cherry)*, 247 B.R. 176, 187 (Bankr. E.D. Va. 2000) (St. John, J.), and *Mickens v. Waynesboro Dupont Employees Credit Union (In re Mickens)*, 229 B.R. 114, 118-19 (Bankr. W.D. Va. 1999) (Krumm, J.).

8

of subject matter jurisdiction.[4]

Based on the Findings of Fact set forth in this Decision, the Court is satisfied that the conduct of United's employee in pressuring the Debtor to pay a debt which had been duly discharged in bankruptcy when, at the very least, the company through its agents acted in reckless disregard of the existence of such discharge,[5] was sufficiently egregious to justify an award of compensatory and punitive damages as well as reasonable attorney's fees to the Debtor. Accordingly, the Court will enter a judgment against United in favor of the Debtor in the amount of $9,003.15, composed of compensatory damages in the net amount of $2,663.15, punitive damages in the amount of $2,500, and attorney's fees in the net amount of $3,840. These amounts awarded reflect credit given for the amounts received by the Debtor in the settlement with Bank of America. In addition the Court will enter an order in the underlying bankruptcy case conditionally granting a judgment against such Defendant for contempt of this Court in the amount of $10,000 plus interest from the date of entry payable to the Clerk of this Court should such Defendant fail to pay the judgment awarded in this adversary proceeding in full within thirty days of the entry of such judgment.

---

[4] The Court recognizes that there is respected authority to the effect that such contempt proceedings must be brought by means of a motion in the underlying bankruptcy case rather than in an adversary proceeding, *see Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186, 1191 (9th Cir. 2011), and *Biery v. Beneficial Kentucky, Inc. (In re Biery),* 2013 Bankr. LEXIS 3622 at *5, Case No. 10-23338, Adv. Proc. No. 13-2005 (Bankr. E.D. Ky. Aug. 29, 2013), but does not believe such authority is controlling in light of the many decisions within this Circuit which have entered contempt judgments in the context of adversary proceedings. The Court is unable to discern any possible prejudice to the defaulting Defendant.

[5] "The prime intent of the discharge injunction is to give the debtor a fresh start. This intent requires the burden of ascertaining whether a debt is discharged to fall on the creditor." *In re Cherry*, 247 B.R. at 189, n.20.

An Order in accordance with this Memorandum Decision will be entered contemporaneously herewith.

Decided this 16th day of October, 2013.

_William F. Stone, Jr._

UNITED STATES BANKRUPTCY JUDGE